JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| **HLI RAIL & RIGGING, LLC** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **ACE HEAVY HAUL, LLC, et al.** | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| June 19, 2020 | /s/ Krishna Narine | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-644-3942 | 856-232-1601 | knarine@lauletta.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

### Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)      The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)      In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)      The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)      Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)      Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____     Judge: _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year     Yes ☐     No ☐
   previously terminated action in this court?

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit     Yes ☐     No ☐
   pending or within one year previously terminated action in this court?

3. Does this case involve the validity or infringement of a patent already in suit or any earlier     Yes ☐     No ☐
   numbered case pending or within one year previously terminated action of this court?

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights     Yes ☐     No ☐
   case filed by the same individual?

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____     _/s/ Krishna Narine_____     _____
                                           *Attorney-at-Law / Pro Se Plaintiff*                     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**     *Federal Question Cases:*                          **B.**     *Diversity Jurisdiction Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts          ☐ 1. Insurance Contract and Other Contracts
☐ 2. FELA                                                                   ☐ 2. Airplane Personal Injury
☐ 3. Jones Act-Personal Injury                                             ☐ 3. Assault, Defamation
☐ 4. Antitrust                                                              ☐ 4. Marine Personal Injury
☐ 5. Patent                                                                 ☐ 5. Motor Vehicle Personal Injury
☐ 6. Labor-Management Relations                                            ☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Civil Rights                                                          ☐ 7. Products Liability
☐ 8. Habeas Corpus                                                         ☐ 8. Products Liability – Asbestos
☐ 9. Securities Act(s) Cases                                               ☐ 9. All other Diversity Cases
☐ 10. Social Security Review Cases                                                *(Please specify):* _____
☐ 11. All other Federal Question Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case
   exceed the sum of $150,000.00 exclusive of interest and costs.

☐ Relief other than monetary damages is sought.

DATE: _____     _/s/ Krishna Narine_____     _____
                                           *Attorney-at-Law / Pro Se Plaintiff*                     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HLI RAIL & RIGGING, LLC** ) | |
| ) | **CIVIL ACTION NO.:** |
| **Plaintiff** ) | |
| **v.** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **ACE HEAVY HAUL, LLC, NHH** ) | |
| **SERVICES LLC and MEDALLION** ) | |
| **TRANSPORT & LOGISTICS LLC** ) | |
| ) | |
| **Defendant** ) | |
| ) | |
| ) | |
| ) | |

## COMPLAINT

HLI Rail & Rigging, LLC ("HLI") brings this action against Defendants Ace Heavy Haul, LLC ("Ace"), NHH Services LLC ("NHH"), and Medallion Transport & Logistics LLC ("Medallion") and for its Complaint alleges as follows:

## PARTIES

1.      HLI is a limited liability company organized under the laws of the state of New York with its principal place of business located at 511 Spring Avenue, Elkins Park, Pennsylvania 19027.

2.      Defendant Ace is a limited liability company organized under the laws of the state of North Carolina with its principal place of business located at 307 Oates Road, Suite H, Mooresville, NC 28117.

3.      Defendant NHH is a limited liability company organized under the laws of the state of Texas with its principal place of business located at 70 East Gate Drive, Suite 110, Mt. Laurel, NJ 08054.  Upon information and belief, NHH is affiliated with Ace.

4.      Defendant Medallion is a limited liability company organized under the laws of the state of North Carolina with its principal place of business located at 307 Oates Road, Suite H, Mooresville, NC 28117.  Upon information and belief, Medallion is affiliated with Ace.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount at issue exceeds $75,000.00, exclusive of interest and costs.

6.      The Court has personal jurisdiction over the parties because they systematically and continually conduct business here and throughout the U.S.   Accordingly, the Court has both general and specific personal jurisdiction over this case.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

## FACTS

8.      Plaintiff, HLI is a New York limited liability company with its headquarters in Elkins Park, Pennsylvania and offices in Laredo, Texas, Spring, Texas and Lindenhurst, New York.  HLI specializes in the lifting and movement of over-dimensional loads and provides full-service transportation logistics and project management.

9.          Defendants Ace, NHH and Medallion (together referred to as "Defendants")are heavy haul trucking service providers.  Upon information and belief, the respective Defendant companies are affiliated, at least to the extent that they all have a common managing member, Mr. Gary Weilheimer.

10.          In July of 2018, Valmet AB, the manufacturer and seller, of a Yankee Dryer engaged HLI to move it from Erie, Pennsylvania to its purchaser, First Quality Tissue in Lock Haven, Pennsylvania (the "Project").  The Yankee Dryer was approximately 9 meters long, 5.6 meters wide, 5.5 meters high and weighed 130,000 kilograms.  Due to its size and weight, The Yankee Dryer constituted an over-dimensional load, which required specialized equipment and preparations to move it from the Port of Erie, Pennsylvania to Lock Haven, Pennsylvania.

11.          HLI has extensive experience transporting Yankee Dryers and has done so on at least 15 occasions.

12.          Moving the Yankee Dryer required HLI to determine a route, to be prepared to move obstructions such as signage, overhead cables or wires and tree branches, to assemble and manage a team to perform the move, including traffic control and to obtain state and local government permits and cooperation for the project, including a permit from the Pennsylvania Department of Transportation ("PennDOT").  The PennDOT permit, established many of the final requirements for the Project.

13.          In order to obtain a permit from PennDOT, HLI was required to determine an acceptable route, including determining that the selected roads and bridges were of sufficient dimensions and had sufficient weight-bearing capacities for transport and maneuvering of the Yankee Dryer.  In addition, PennDOT inspects and approves the equipment utilized during the Project prior to issuing a permit. HLI surveyed the route to determine what signage, wires, cables

and tree branches had to be moved to accomplish the Project as well as to determine the capacities of the roads and bridges.  PennDOT also required HLI to provide plans for detours and for traffic management during the project and to obtain approvals from the towns and municipalities through which the Yankee Dryer was to be transported.

14.     Starting in July 2018, HLI initiated the process for submitting a formal permit application for the Project.  That process included conducting route surveys and engineering studies and regular communication with PennDOT about the Project, including plans for traffic management, movement and replacement of road signage and overhead wires and cables. Through this dialogue with PennDOT, HLI learned the rules and requirements that it would have to meet in order to obtain a permit for the Project.

15.     In early August of 2019 HLI submitted a formal permit application for the Project and the permit was granted in November 2019. Typically, the permitting process takes three to four months.  In this instance, it took sixteen months.

16.     While working on obtaining a PennDOT permit, HLI also discussed the Project with numerous sub-contractors to determine the appropriate amount of equipment, personnel and services that it would require and the pricing and availability for the same.

17.     Discussions with sub-contractors included discussion with D & G Heavy Haul ("D & G") about the equipment that would be required to complete the Project.  HLI discussed with the D & G among other things the requirements for heavy haul trucks, bucket trucks, traffic control as well as escort vehicles.

18.     During discussions, HLI and D & G agreed to complete the Project in seven days, which if properly equipped would be more than enough time.  The seven-day period consisted of two days for loading and unloading the Yankee Dryer and five days for transport to the

destination in Lock Haven, PA.  HLI also communicated that it in its experience given the route

that could accommodate the Project, in order to be properly equipped, the heavy haul sub-

contractor would require, eight bucket trucks, enough personnel to ensure that the Yankee Dryer

could be maneuvered through turns, around obstacles, and through areas with overhanging wires,

signs and tree limbs, and fully functioning heavy haul trucks with sufficient power to move the

130,000 kilogram Yankee Dryer up and down  highway entrance and exit ramps and up and

down the steep hills that exist in area of Pennsylvania that had to be traversed.

19.       In addition to the equipment requirements, HLI communicated to D&G that the

heavy haul sub-contractor would need to provide police escorts, pilot cars for personnel, traffic

control services, tree trimming services and engineering services.

20.       In October of 2019, D & G informed HLI that the heavy haul sub-contractor to

provide the actual services would be its affiliate Ace Heavy Haul.  HLI and Ace both signed a

Rate Confirmation Sheet dated October 18, 2019 that Ace prepared for the Project, which is

attached hereto as Exhibit A.

21.       The Rate Confirmation Sheet provided for "3 DAYS MOVE IN 1 DAY

ASSEMBLING THE TRAILER 5 DAYS TO MOVE TO DESTINATION 1 DAY

DISASSEMBLING TRAILER 3 DAYS TO COME HOME". *See* Exhibit A.

22.       On November 6, 2019, PennDOT informed HLI that it would authorize the move.

Accordingly, HLI coordinated and mobilized the sub-contractors with whom it had prepared for

the Project, including Ace.

23.       Ace moved its equipment to the departure location and upon arrival assembled the

trailer for the move. After assembly, Ace was required to have its trailers inspected by

PennDOT. PennDOT inspection among other things was to ensure that the spacing between the

axles on the trailer matched the schematics upon which it had in part it would base its grant of a permit to make the move.

24.     In order to account for the potential for delay caused by the Thanksgiving holiday, HLI agreed with Ace and D & G that it would pay for detention time provided that during the detention period, Ace had obtained all necessary permits and was fully capable of performing the move.

25.     In mid-November, Ace's trailer's axles did not match the schematic drawings that had been provided to PennDOT and consequently, Ace failed its initial inspection. Ace was then required to adjust the trailer's axles to conform to the schematics and to have it re-inspected.

26.     Ace adjusted the trailer's axles to conform to the schematics and had the trailer re-inspected.  On or about November 19, 2019 two days before the Thanksgiving holiday on November 21, 2019, the trailer passed inspection. Given, the holiday, PennDOT declined to issue a permit for the move until after the holiday.

27.     After Thanksgiving, among other things, the Parties had to mobilize personnel, provide final coordination of equipment and support, including bucket trucks, traffic control and escort vehicles, and load and secure the Yankee Dryer, in the hopes that PennDOT would promptly issue the required permit.

28.     On December 4, 2019, PennDOT issued the permit necessary to start the Project. The movement of the Yankee Dryer started on December 5, 2019.  The movement was conducted by a caravan of bucket trucks, pilot cars carrying personnel, and police escort vehicles.  At that time, contrary to HLI's direction, Ace provided an insufficient number of bucket trucks to efficiently move the Project through the city of Erie and other locations where

there were numerous overhead cables, wires and tree limbs.  HLI was forced to secure additional bucket trucks to support the Project.

29.      Starting on December 7, 2019, Ace's truck's engine repeatedly failed due to a buildup of soot and particulate matter in the diesel particulate filter.

30.      A truck's diesel particulate filter is a component that removes soot and diesel particulate matter from its exhaust. Operating a diesel truck at lower speeds cause production of higher amounts of soot and particulate matter in its exhaust than at higher speeds.  A diesel particulate filter can be cleaned by filter regeneration, which requires operating the engine in a manner that elevates the temperature of the exhaust.  This can be accomplished by operating the truck at higher speeds than can be maintained on city streets.

31.      Given the size of the Yankee Dryer and the complexities of moving it, the truck hauling the loaded trailer by necessity operated at lower speeds leading to a failure of the engine to regenerate the diesel particulate filter. This failure caused the engine shut down experienced during the project.

32.      Ace could have regenerated its diesel particulate filters by, on a daily basis, detaching its truck from the trailer and operating it at highway speeds. Ace failed to do this or take any other measures to regenerate its truck's diesel particulate filter, which delayed completion of the Project and increased its costs.

33.      During the course of the Project, Ace's truck's transmission box failed numerous times, which on each occasion also brought the caravan to a complete stop, which also increased the time and costs required to complete the Project.

34.      HLI was forced to rent an additional truck during the move because Ace's equipment was not able to move the payload up the steep hills along the route or to control it

during the descents. HLI informed Ace of the route and its topography well in advance of the start of the Project.  Nevertheless, Ace's truck's inability to manage the hill along the route was not discovered until the equipment failed on a steep hill during the move.  This failure also brought the caravan to a halt and increased the time and costs required to complete the Project.

35.     During the course of the Project it also became apparent that Ace provided an insufficient number of personnel to efficiently steer the loaded truck through certain turns and around certain obstacles.  When moving oversized loads such as the Yankee Dryer, trucking sub-contractors customarily engage a number of steering personnel to assist the driver with navigating obstacles safely.  An insufficient number of steering personnel, which was the case here, will slow the progress of the move.  Given that it had advanced notice of the route, Ace was well aware of the turns and obstacles along the route, and failed to engage a sufficient number of steering personnel, which further slowed the Project's progress.

36.     Ace's truck's engine failures, transmission box failures, insufficient truck power to navigate hills and insufficient steering personnel each brought the entire caravan to a halt at different times, caused traffic jams and attracted the attention of PennDOT. Given the traffic and safety problems that arose whenever the caravan was brought to a halt, PennDOT limited the number of hours that the Project could operate each day thereby increasing the number of days to complete the move from five to twelve.

37.     The increase in the number of days of the Project, beyond the five days to complete it set forth in the Rate Confirmation Sheet, required HLI to incur costs for bucket trucks, escort and support vehicles, tree trimming services, handling signage, engineering services and rental of an additional truck for the period from December 12, 2019 through

December 17, 2019, when the move was completed.  Each of those costs should have been paid by Ace as they were for the period December 5, 2019 through December 11, 2019.

38.	Given that on December 12, 2019, the Yankee Dryer was in transit, HLI had no choice but to pay the sub-contractors additional charges through December 17, 2019 for providing bucket trucks, escort and support vehicles, tree trimming services, handling signage, engineering services and rental of an additional truck in order to complete the Project.

39.	On March 12, 2020, HLI issued its invoice number 5626 to Ace in the amount of $308,452.65 for those costs, which is attached as Exhibit B.

40.	The Parties have engaged in numerous discussions about this invoice, but Ace has made no payment.

## COUNT I
## BREACH OF CONTRACT
### (as to Defendant Ace)

41.	Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length.

42.	The Rate Confirmation Sheet is an enforceable contract between HLI and Ace, which delivery of the Yankee Dryer to its final destination at Lock Haven, PA within seven days of taking possession of it.

43.	Under that contract, Ace was obligated to provide bucket trucks, escort and support vehicles, tree trimming services, engineering services, sufficient personnel for steering and properly operate sufficient trucking equipment for the duration of the Project.

44.	Ace breached the contract by failing to provide sufficiently powerful trucking equipment, failing to properly operate that equipment.

45.      In addition, it breached the contract by failing to provide bucket trucks, escort and support vehicles, tree trimming services, signage handling services, and engineering services for the period December 12, 2019 through December 17, 2019.

46.      Because these failures occurred during the midst of the Project, HLI was forced to pay costs for bucket trucks, escort and support vehicles, tree trimming services, signage handling services, engineering services and truck rental for the period December 12, 2019 through December 17, 2019 and was thereby damaged in the amount of $308,452.65

47.      The damages caused by Ace's breach of contract is in excess of the jurisdictional minimum under the diversity statute.

48.      HLI requests that the Court enter judgment for its damages against Ace, including but not limited to all actual, incidental and consequential damages.

**COUNT II**
**UNJUST ENRICHMENT**
**(as to all Defendants)**

49.      Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length.

50.      HLI provided to Ace and paid costs in the amount of $308,452.65 for bucket trucks, escort and support vehicles, tree trimming services, signage handling services, engineering services and truck rental for the period December 12, 2019 through December 17, 2019 and was thereby damaged

51.      Ace was obligated to provide those services and items to HLI.

52.      As such, the Defendants have been unjustly enriched, at HLI's expense, by having received bucket trucks, escort and support vehicles, tree trimming services, signage handling

services, engineering services and truck rental for the period December 12, 2019 through

December 17, 2019 without payment to HLI for such charges.

53.     It would be inequitable and against good conscience for Defendants to retain the

benefits of HLI's goods and services without payment to HLI.

54.     HLI requests that the Court enter judgment for its damages against Defendants,

including but not limited to all actual, incidental and consequential damages.

WHEREFORE, Plaintiff prays that judgment be rendered in its favor awarding it:

a.     Actual damages in an amount over three hundred eight thousand four hundred

fifty-two dollars ($308,452.00) as determined by the trier of fact;

b.     Its reasonable and necessary attorneys' fees;

c.     Its costs of court;

d.     Pre-judgment and post-judgment interest;

e.     Such other and further relief as to which Plaintiff may be justly entitled and may

be supported by the evidence in this case.


Dated: June 19, 2020                    Respectfully submitted,


                                        /s/ Krishna Narine
                                        Krishna B. Narine, Esquire (PA 52238)
                                        LAULETTA BIRNBAUM
                                        100 S. Broad Street, Suite 905
                                        Philadelphia, PA 19110
                                        Telephone: 215-644-3942
                                        Facsimile: 856-232-1601
                                        knarine@lauletta.com

# EXHIBIT A

# ACE HEAVY HAUL
### 307 Oates Rd. Suite H
#### Mooresville, NC28117
**Phone 219-531-2999**          **Fax 219-548-8885**

## "RATE CONFIRMATION SHEET"          Order #   1160914

| PREPARED BY: | Gail Bretthorst | Date of issue: | 10/18/2019 |
|---|---|---|---|
| CUSTOMER: | HLI Rail & Rigging, LLC | Point of Contact (POC): | Ross McLaren |
| POC ADDRESS: | 511 Spring Ave. | POC Phone: | 718-309-6693 |
| POC City/State | Elkings Park, PA  19027 | POC FAX: | |

| COMMODITY: | | LENGTH | WIDTH | HEIGHT | WEIGHT | Quote |
|---|---|---|---|---|---|---|
| Dryer | | 29'9" | 18'6" | 18'9" | 297,623 | 1 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| From: | Erie, PA | | To: | Lock Haven, PA | |
|---|---|---|---|---|---|

Good for _1_  Number of Shipment(s).

| | QUOTE #1 | QUOTE #2 | QUOTE #3 | QUOTE #4 | COMMENTS: |
|---|---|---|---|---|---|
| PLUS SIGN REMOVAL | | | | | |
| PLUS ROUTE SURVEY | | | | | |
| PLUS BUCKET TRUCK | | | | | |
| PLUS POLICE ESCORTS | | | | | |
| PLUS UTILITIES | | | | | |
| PLUS ENGINEERING | | | | | |
| PLUS CRANES AND FORK LIFTS AT DOCK AND AT THE CONSIGNEE TO ASSEMBLE AND DISASSEMBLE TRAILER | | | | | |
| PLUS TREE TRIMMING | | | | | |
| PLUS REMOVAL/REPLACEMENT OF LATERAL OBSTRUCTIONS | | | | | |
| PLUS ESCORTS IF MORE THAN 3 CIVILIAN ESCORTS | | | | | |
| TRUCKING | $ 210,000.00 | | | | |
| INCLUDES 3 DAYS MOVE IN 1 DAY ASSEMBLING TRAILER 5 DAYS TO MOVE TO DESTINATION | | | | | |
| 1 DAY DISASSEMBLING TRAILER  3 DAYS TO COME HOME | | | | | |
| WEIGH DAYS BY THE STATE OF PA WILL BE CONSIDERED AN EXTRA DAY | | | | | |
| ALL ADDITIONAL TRANSPORTATION DAYS WILL BE BILLED @ $20,000.00 PER DAY 7 DAYS A WEEK | | | | | |

PLUS ITEMS ARE SUBJECT TO 15% ADMINISTRATION FEE
ONCE A PO IS ISSUED THERE WILL BE A 15% CANCELLATION CHARGE, ONCE TRUCK IS IN TRANSIT THERE
WILL BE A 25% CANCELLATION FEE
RATES ARE PREDICATED ON THE GOODS BEING RELEASED AT A VALUE OF $2.50 ($1.00 FOR USED GOODS)
PER POUND, PER ARTICLE NOT TO EXCEED $100,000.00 PER ENTIRE TRUCKLOAD (THE "RELEASED VALUE").
IF ACTUAL CARGO VALUE IS GREATER THAN SUCH RELEASED VALUE, CUSTOMER MUST CONSPICUOUSLY
DECLARE A GREATER VALUE ON THE FACE OF THE RATE CONFIRMATION SHEET, WHICH IS ACCEPTED
BY CARRIER IN WRITING PRIOR TO LOADING; AND, IN SUCH CASE, AN EXCESS VALUATION CHARGE SHALL
BE ADDED TO THE QUOTE IN ADDITION TO ALL OTHER RATES.  OTHERWISE, ABSENT PROPER
DECLARATION OF EXCESS VALUE, THE SHIPMENT SHALL BE TRANSPORTED UNDER THE RELEASED
VALUE STATED HEREIN.

In the event there is a lack of availability for adequate equipment, Ace Heavy Haul, LLC can tender the
freight to its affiliated broker company, Acel Heavy Haul, LLC to broker such freight to qualified carrier.
I have read and agree to the terms listed on this document and agree to terms and mentions on Appendix A (page 2)
Provisions not covered on this rate estimate sheet are subject to the provisions published in BGME rules publication 101.

NAME   ROSS MCLAREN
TITLE   PARTNER
DATE   10/18/2019

pg. 1 of 3

ROSS REVISED vb

## APPENDIX A – PAGE 2 TO RATE CONFIRMATION SHEET – EXCEPTIONS & CLARIFICATIONS

Our pricing is based on weights and dimensions furnished by the shipper/customer.  Any changes in size, weight or quantity will result in additional charges.  Also, the quote is provided based on availability of specialized trailer equipment.

The shipper/consignee is responsible to provide clear and direct access into and out of loading and unloading sites FOR Carrier's over-the-road tractor-trailer equipment combination laden with the Shipment at NO cost to Carrier.

Loading/un-loading, assembly, un-stacking and disassembly are the sole responsibility of shipper and/or consignee respectively, unless otherwise specially provided in our quote.

Quote does not include railroad crossing right-of-ways, utilities, bucket trucks, removal of any obstructions or other similar services, if required. These costs will be added to the quote, plus 15%.

Quote does not include the cost of any, engineering, bridges studies, matting of bridges, culverts, special convoys, bonds or route surveys by any city, county, state or province or other party.  Quote does not apply when Frost Laws are in effect.

Rate estimate reflects an estimated cost based upon the center of gravity of the load being evenly distributed.  If not, the customer must provide a drawing to reflect the actual center of gravity for trailer and deck adjustments.

Pricing does not include wrapping, tarping, sealing or other attempted protection from natural elements or road spray or similar hazard. Carrier will tarp the load when requested under the quote, but the customer must understand that tarping will not provide a protection from moisture, weather conditions, roadspray or other similar hazard for freight transported on open-bed trailer equipment.

Carrier shall not be responsible for any delays caused by state/city, province or federal regulatory agency.  Also, Carrier shall not be responsible for delays from weather, Acts of God, labor dispute or union facilities or other causes beyond Carrier's reasonable control.

Customer shall be responsible for all blocking/bracing and packaging materials or fabrication cost if needed to properly secure the load so that it may be safely transported.  Shipper shall be solely responsible for preparation and packaging of cargo in such manner so as to ensure the safe transportation of the cargo under the normal rigors of transportation on open bed equipment where appropriate or desirable, Shipper shall crate the cargo, and if because of crating Carrier may not readily observe the condition of the cargo within the container, Shipper warrants and represents that the cargo may be transported, without special precautions by Carrier, safely and without damage.

Quote does not include detention charges should they occur.  Dock/port/rail or storage charges are not included and are the responsibility of the shipper/customer.

Customer shall be responsible for providing any documents (on letterhead) required by DOT or other regulatory agency for issuance of special hauling permits.

RATES ARE PREDICATED ON THE GOODS BEING RELEASED AT A VALUE OF $2.50 ($1.00 FOR USED GOODS) PER POUND, PER ARTICLE, NOT TO EXCEED $100,000.00 PER ENTIRE TRUCKLOAD (THE "RELEASED VALUE").  IF ACTUAL CARGO VALUE IS GREATER THAN SUCH RELEASED VALUE, CUSTOMER MUST CONSPICUOUSLY DECLARE A GREATER VALUE ON THE FACE OF THE RATE CONFIRMATION SHEET, WHICH IS ACCEPTED BY CARRIER IN WRITING PRIOR TO LOADING; AND, IN SUCH CASE, AN EXCESS VALUATION CHARGE SHALL BE ADDED TO THE QUOTE IN ADDITION TO ALL OTHER RATES.  OTHERWISE, ABSENT PROPER DECLARATION OF EXCESS VALUE, THE SHIPMENT SHALL BE TRANSPORTED UNDER THE RELEASED VALUE STATED HEREIN.

Pricing does not include charges for administrative cost of paperwork and time associated with Customs Clearance.

At least 30 days' notice must be provided to Carrier to secure hauling permit approvals. However, this does not guarantee that approvals can be obtained within a 30 day time frame.  Some states require 6-8 weeks or more for approvals.

INITIAL

**APPENDIX A – PAGE 3 TO RATE CONFIRMATION SHEET – EXCEPTIONS & CLARIFICATIONS**

The following events are some examples which may cause excessive routing on permits and shall be deemed beyond the control of the Carrier and may increase the charges in the estimate: highway or bridge construction or restrictions, not in progress at the time of quoting; or impassable roadways or damages caused to highways or bridges by flooding, earthquakes, hurricanes or any other national disasters.

Truck order not used: When specialized equipment is ordered but not used, and the equipment has already began preparation to move to the shipper/loading facility, charges shall be incurred from the starting location to the point that the information is received to cancel/or put off said load, back to the starting location or closest re-loading point, whichever is less. Charges shall include all costs for truck/trailer, permits, escorts or any other applicable accessorial costs.

Freight Charges are required to be paid within 30 days of the invoice date. Charges not paid when due shall accrue service fees at the rate of 1.5% per month of the unpaid balance, and reasonable attorney's fees of 15% of the unpaid balance.

Dual Lane trailer is subject to assembly charges. Labor to configure trailer is the reponsibility of the customer.

Detention charges are as follows:

| | | | |
|---|---|---|---|
| _____ | X____4 HOURS_____ | | Free Time (Loading & Un-loading) |
| _____ | $937.50_____ | | Per hour after free time expires |
| _____ | | $7,500.00_____ | Max per day based on 8 hour day and equipment provided. |

This estimate is contingent on Carrier's ability to secure permits from all proper governing agencies.

_____ INITIAL

_____

**AGENT**

_____

**DATE**                          **TERMINAL**

ROSS REVISED.xls

# EXHIBIT B



# INVOICE

**SOLD**
**TO**

**Ace Heavy Haul**
**307 Oates Road, Suite H**
**Mooresville, NC 28117**

Attention:          **Sean Bauder**

| ORDER NUMBER | OUR JOB NO. | TERMS | INVOICE NO. | DATE |
|---|---|---|---|---|
| **Sean Bauder** | J-180051 B-11137 | Due Upon Receipt | 5626 | 3/12/2020 |

**Description of Service:**
Transportation

| | | | | | |
|---|---|---|---|---|---|
| City lights | 2 bucket trucks | 12.12 to 12.17.2019 | $7,000 x 6 days | $ | 42,000.00 |
| Kenco | 4 bucket trucks | 12.12 to 12.17.2019 | $8,640 x 6 days | $ | 51,840.00 |
| Kuharchik | signs/signal handling | 12.12 to 12.17.2019 | $12,490 x 6days | $ | 74,940.00 |
| Millers tree service | tree trimming | 12.12 to 12.17.2019 | $2,000 x 6days | $ | 12,000.00 |
| Peak engineering | PE engineer | 12.12 to 12.17.2019 | $314/hr x 48 hrs | $ | 15,072.00 |
| X-5-0 | Pilot cars | 12.12 to 12.17.2019 | $675 x 6 days | $ | 4,050.00 |
| State Police | mob/demob escorts | | $1,543 + $2,285.16 | $ | 3,828.16 |
| State Police | escort hours | 12.12 to 12.17.2019 | $7,219.98 x 6 days | $ | 43,319.88 |
| Midwest electric | 1 bucket truck | 12.12 to 12.17.2019 | $1,456.08 x 6 days | $ | 8,736.51 |
| Enerstar | third truck rental | 12.12 to 12.17.2019 | total | $ | 18,056.10 |
| ITC | traffic control | 12.12 to 12.17.2019 | | $ | 19,610.00 |
| TD line | 1 bucket truck | 12.12 to 12.17.2019 | $125 x 120hrs | $ | 15,000.00 |

**WIRE TRANSFER INFORMATION**
Bank - Wells Fargo Bank, N.A, contact Scott B. Woll, Jr. (Tel 215.670.6855)
Address - 123 S. Broad St., 5th Floor, Philadelphia, PA 19109
Account Name - HLI Rail and Rigging, LLC
Account Number - 1183981396
ABA # for wires121000248.   ABA # for ACH 031000503

Ross McLaren

**TOTAL AMOUNT DUE THIS INVOICE**          **$   308,452.65**

**HLI Rail and Rigging, LLC**
Reg. Office: 65-01 Fresh Meadow lane, Fresh Meadows, New York 11365
Tel: 718-961-6634